SAVOY, Judge.
This case and the companion case of LeRoy v. Cooper, et al., 251 So.2d 810 (La.App. 3 Cir. 1971), arose out of an automobile accident that occurred on Louisiana Highway No. 1 in Natchitoches Parish, on February 22, 1969. The accident involved a car owned by Troy J. Vascocu and being driven by his minor son, William M. Vascocu, and a car being driven by Patsy K. Cooper. At the time of the accident Mrs. Cooper was in the process of making a U-turn on the highway when her car stalled across the road and was struck by the Vascocu car. Passengers in the Vascocu car were Lynn Rene Lewis, the minor daughter of plaintiff in this suit, W. A. Lewis, and Susan Doris LeRoy, the minor daughter of plaintiff in the companion case, Albert LeRoy. Originally, defendants in both suits were Patsy K. Cooper and the liability insurer of the Cooper car, Employers’ Liability Assurance Corporation, Ltd., Troy J. Vascocu, individually and as administrator of the estate of his minor son, William M. Vascocu, and the liability insurer of the Vascocu car, Casualty Reciprocal Exchange. Subsequent to the filing of the original petition, William M. Vascocu was emancipated by marriage, and through amended pleadings, was served in his own right. Plaintiffs reached a compromise settlement with Patsy K. Cooper and her liability insurer, reserving all rights against the remaining defendants, and filed amended pleadings in both suits asserting that the sole proximate cause of the accident was the negligence of William M. Vascocu. There were also third party claims in the suits which are not applicable to the instant appeals. The remaining defendants in both cases denied liability, and alternatively demanded a reduction of any judgment by 50% in view of the compromise settlement with the other defendants.
After a consolidated trial on the merits, the district court rejected the demands of plaintiffs in both suits on the ground that it found no negligence on the part of the operator of the Vascocu car. From *807 this judgment plaintiffs filed appeals to this Court in both suits. Albert L. LeRoy died after the appeal was filed, and City Bank and Trust Company was substituted as party plaintiff in the companion case.
The issues are (1) whether or not William M. Vascocu was guilty of negligence which was a proximate cause of the accident; and if so, (2) whether or not Patsy K. Cooper was guilty of negligence which was a proximate cause of the accident so as to afford defendants a 50% reduction of any award; and (3) the quantum to be awarded.
The accident occurred at about 9:30 o’clock P.M. on February 22, 1969, on Louisiana Highway No. 1 just south of the city limits of Natchitoches in Natchitoches Parish at a point about 400 feet south of the driveway into Cooper’s Trailer Park. The highway in the area involved is a standard two-laned hard surfaced road, and was straight and level. The speed limit was 60 miles per hour. The weather was foggy and the highway was dry. Prior to the accident, Mrs. Cooper was driving southerly along the highway. The headlights on the Cooper car were on bright, and in its position, the left headlight was in the northbound lane and was visible to southbound traffic on the highway. William M. Vascocu was driving his car in a southerly direction on the highway at about 55 to 60 miles per hour and noticed what appeared ahead as a one-eyed car. Vascocu testified he eased up on the accelerator, switched his lights from dim to bright and then immediately realized that the car was not moving and saw what appeared to be a chrome strip in his lane of travel. He applied his brakes and skidded a distance of 98 feet to the point where the front of his car struck the left side of the Cooper car. The skid marks were located within the southbound lane of the highway with the right tire marks near the edge of the highway. The only real conflict in the evidence pertained to the extent of fog present on the highway.
Patsy Cooper’s testimony was taken by deposition. She stated she was minding her own baby and was sitting with a baby of a friend, and took the children for a ride in an effort to lull them to sleep. She noticed some light patches of fog, some heavier than others, as she proceeded south from Natchitoches. She stated the fog got heavier in the vicinity of Cooper’s Trailer Park, and she decided not to go any further in the heavy fog and attempted to turn around in the highway. She did not know the condition of the shoulders of the road, so she attempted to make a U-turn by staying on the paved portion of the highway, by pulling forward and then backing up, and at that point her car stalled. She admitted her car was red and gave a black appearance at night, that she was stalled across the highway about three minutes before the accident, and that she made no effort to give a warning except by blowing her horn. She estimated she had entered the heavier fog by twenty or fifty feet. On cross-examination she testified that the fog in the area of the accident was the first real patch of heavy fog, and that the fog north of that area was light fog that could be seen through.
Vascocu admitted he had passed a car by going around on the shoulder of the road at a point some distance before the point of the accident, and that as he reentered the highway after passing the vehicle he was driving 50 to 55 miles per hour. He stated he then drove at a speed of 55 to 60 miles per hour with his headlights on dim, for no particular reason, until he noticed that there was something in the road. His first impression was that a one-eyed car was coming toward him, but he was not sure in which lane of traffic this car was located, or what distance it was from him. He stated he let off the gas to determine the situation of the one-eyed car and turned on his bright lights. As he did this his vision was increased and he was able to detect an obstruction in his lane of traffic, a reflection of the chrome strip on the side of the Cooper car. It *808 was then he realized the danger and applied his brakes. As he skidded forward, he also tried to turn to the right, but the skid prevented a turn. He stated he had not noticed any fog north of the accident scene, and that he first noticed it was foggy on the night of the wreck right after the accident occurred. He stated that the fog started just before the point of the impact.
Lynn Lewis and Susan LeRoy were passengers in the Vascocu car. Lynn Lewis testifed she noticed some thin fog prior to the accident, which was not sufficient to require a driver to slow down, and that the first heavy fog was at the place where the accident occurred. Susan LeRoy testified as to patches of fog, some thick and some thin, and stated she only saw a light fog at the place where the light appeared to be coming at them prior to the accident.
Joseph Hillary Lacaze testified he was driving at about 35 to 40 miles per hour, and the Vascocu car passed him on his right side at about 50 miles per hour shortly before the accident. He testified that he could see to the point of the accident ahead at a distance of some 250 to 300 yards, and at the time of the accident there was no fog between his vehicle and the Vascocu vehicle. He saw the taillights and brake lights on the Vascocu car, and the flicker of the car lights in the fog. He testified the accident occurred at a point about 30 feet within the patch of fog. He stated he did not see any fog on the highway prior to the point where the accident occurred.
Miss Gloria Marie Lacaze testified she was riding with her father, that she noticed the weather conditions were foggy in spots, and that the car in which she was riding first got in fog right before they came upon the accident scene. She said the fog started at about the driveway of Cooper’s Trailer Park which was about where the accident happened as she could best recall. She thought the accident occurred at a point about 15 feet within the foggy area.
Sgt. Albert A. Wineberg, Jr., with the Natchitoches Police Department, testified he was at the police station and was called to come to the scene of the accident. He stated the road was clear until the fish hatchery, where he ran into fog and reduced his speed from 60 to 35 or 40 miles per hour. As he passed the hatchery the fog thinned out, and it was medium or less at the point of the accident. He testified he could visualize taillights at the accident scene from a distance of about 150 to 200 yards. Riding with Wineberg was Glenn Bowden, a State Police officer. He noticed fog, heavy in places and thinning up, beginning at about the Towne House and stated they entered into a heavy patch of fog some distance before they neared the accident scene. He placed the accident at the entrance to Cooper’s Trailer Park and stated he did not recall the fog being all that thick right at the accident scene.
Trooper H. P. Salard was the official investigating officer. Because of his location it was about 15 minutes before he reached the scene of the accident. He stated he was able to drive at about 60 to 65 miles per hour to the accident scene. He stated that none of the fog was really thick, and he had difficulty in seeing through only one patch of fog south of the Towne House.
Deputy Bobby Breeder testified his was the second car to arrive at the accident. He ran into fog south of the Towne House at the fish hatchery and again at Cooper’s Trailer Park. He testified he drove only 35 to 40 miles per hour because the fog was fairly heavy.
Lt. Oscar Delrie, Jr. of the Civil Defense Police, testified it was very foggy, and that at Cooper’s Trailer Park visibility was about 75 to 100 feet.
Howard Cooper, operator of the trailer park, stated there was fog on the park and highway but it was not too heavy. He stated he could see the lights of one of the cars at the accident scene from his driveway, but he could not distinguish the cars
*809 Mrs. H. C. Cooper testified it was quite foggy, that from her driveway she could see taillights and headlights at the accident scene and could vaguely see figures of people walking back and forth. She also stated it was foggier to the north of the trailer park than to the south.
Plaintiffs in the two instant appeals maintain that Vascocu had been operating his car through fog of varying intensity for a period of time prior to the accident, and that since his visibility was materially impaired by fog, he was charged with an unusually high degree of care under the rule of law enunciated in Hernandez v. State Farm Mutual Automobile Insurance Co., 192 So.2d 679 (La.App. 3 Cir. 1966). It is maintained that he was negligent in driving at 55 to 60 miles per hour considering the atmospheric conditions present at the time and place of the accident. Plaintiffs maintain he was also negligent in driving with his headlights on dim and in failing to take quicker action upon perceiving an object ahead in the fog. The defendants maintain that the Cooper vehicle was stalled a short distance into the only heavy fog bank encountered, and that Vascocu started stopping as soon as the heavy fog bank became apparent. It is maintained that the Hernandez case, supra, above and the rule of law enunciated therein are not applicable to the facts of the instant appeals. Defendants maintain that Vascocu was not negligent since he observed the danger as soon as it was reasonably possible to do so. It is maintained that the findings of fact as made by the district court should not be disturbed.
After having carefully reviewed the facts and circumstances of this case, this Court finds there is ample evidence to support the holding of the district court that Vascocu was not negligent. There was a conflict in the evidence as to the extent of the fog present on the highway north of the area where the Cooper car was stalled. Without restating the evidence, it suffices to say that several of the eye witnesses to the accident testified that the fog north of the scene of the accident was light, and was not such as to materially affect visibility. The record also shows that the Cooper car was located only about 30 feet within the heavier fog bank, and the headlight of that stalled car was visible to southbound traffic for a distance of several hundred feet. Considering the facts, this Court does not find that Vas-cocu was negligent in driving at a speed of 55 to 60 miles per hour up to the point where he approached the stalled car and the heavier fog bank. Since his visibility was not materially impaired, the rule of law enunciated in the Hernandez case, supra, is not applicable, and he was only required to exercise reasonable care rather than the unusually high degree of care as required where visibility is materially impaired.
As Vascocu approached the area where the car was stalled, the evidence shows he observed what appeared to be a one-eyed car ahead. He eased off on the accelerator, without applying his brakes at this point. We see no improper action here, as he could assume the car ahead was on its right lane of travel and vehicles with only one headlight burning are not unexpected on the highway. Nor do we know of any law that requires a driver to keep his bright headlights burning at all times, especially when proceeding ahead of another vehicle or when another car is approaching. Vas-cocu investigated the situation ahead by switching his lights to bright and saw what appeared to be a strip of chrome across his lane of travel, then, realizing the danger, he applied his brakes and skid 98 feet. Considering the reaction time at a speed of 50 miles per hour, he must have realized the danger at a distance of at least 153 feet from the point of impact. Since the accident occurred on a dark night, and Vascocu was peering at a dark car behind a headlight, we agree with the finding of the district court that Vascocu observed the danger as soon as it was reasonably possible. The issue as to the negligence of Vascocu is one of fact, and *810 each case must be decided upon its own peculiar facts and circumstances. We find no manifest error in the holding of the district court that Vascocu was not guilty of negligence.
In view of our ruling on the issue of Vascocu’s negligence, there is no need to consider the remaining issues.
For the reasons assigned, the judgment of the district court is affirmed. All costs of appeal are assessed against plaintiff.
Affirmed.